Krystle Delgado, AZ Bar No. 031219
**Delgado Entertainment Law, PLLC**
6803 E. Main Street, Suite 1116
Scottsdale, Arizona 85251
Telephone: (480) 248-0657
Facsimile: (480) 718-8759
krystle@delgadoentertainmentlaw.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Zoe Federoff Smerda, an individual, Marek Smerda, an individual, Richard Shaw, an individual, Paul Allender, an individual, Sasha Baxter, an individual, and Lindsay Matheson, an individual. | Case No. 4:25-cv-00542-RM |
| | **SECOND AMENDED COMPLAINT** |
| Plaintiff, | **(Jury Trial Requested)** |
| vs. | |
| The Oracle Management, Inc., a domestic for-profit corporation, Daniel Lloyd Davey, an individual, Cradle of Filth Touring Limited, an international corporation, and Cradle of Filth LLP, an international limited liability partnership. | |
| Defendant. | |

COMES NOW, Plaintiffs, Zoe Federoff Smerda ("**Federoff**"), an individual, Marek Smerda, professionally known as "Ashok" ("**Smerda**"), Richard Shaw ("**Shaw**"), an individual, Paul Allender ("**Allender**"), an individual, Sasha Baxter, professionally known as "Sasha Massacre" ("**Baxter**"), an individual, and Lindsay Matheson ("**Matheson**"), professionally known as "Lindsay Schoolcraft," an individual (collectively, "**Plaintiffs**"), by and through undersigned counsel, and complaining against Defendants, The Oracle Management, Inc. a for-profit corporation ("**Oracle**") and Daniel Lloyd Davey,

- 1 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

professionally known as Daniel Filth ("**Davey**"), an individual resident of the United Kingdom, Cradle Of Filth Touring Limited, a corporation existing in the United Kingdom (the "**Touring Entity**"), and Cradle of Filth LLP, a limited liability partnership existing in the United Kingdom (together with the Touring Entity, "**Cradle of Filth**") (collectively the ("**Defendants**") (together with Plaintiff the "**Parties**"), for their Second Amended Complaint, state and allege as follows:

**INTRODUCTION**

1. This action arises out of: (i) the unauthorized use and ongoing commercial exploitation of all Plaintiffs' likenesses and images in merchandise, (ii) unpaid royalties owed to Plaintiff Federoff and Plaintiff Smerda for live performances, (iii) unpaid royalties owed to Plaintiff Federoff, Plaintiff Smerda, and Plaintiff Matheson for their performances in musical sound recordings, (iv) the unauthorized use of Plaintiff Matheson's copyrighted works by Defendants, (v) the disparagement of Plaintiff Federoff and Plaintiff Smerda following their discontinuation of involvement with Defendants, (vi) unjust enrichment from Plaintiff Baxter's performances in music videos, and (vii) unjust enrichment from the commercial exploitation of Plaintiff Federoff and Plaintiff Smerda at in-person events (i.e., meet and greets).

2. Cradle of Filth is a music group that has been performing, recording, and releasing heavy metal music, including a wide range of sub-genres of heavy metal, since in or about 1991.

3. Prior to the events of this Complaint, Plaintiffs Federoff, Smerda, Matheson, Allender and Shaw composed, recorded and performed with Cradle of Filth extensively over many years.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

4.      Throughout this time, Plaintiffs never signed or executed any agreement with Defendants regarding the use of Plaintiffs' names, likenesses, and images on Merchandise (defined herein).

5.      Defendants created a wide variety of Merchandise featuring Plaintiffs' names, likenesses, and/or images.

6.      Plaintiffs were not compensated for the use of their names, likenesses, and/or images in Merchandise produced and sold by Defendants.

7.      Plaintiffs Federoff, Smerda, Matheson, Allender and Shaw, together with Defendants Davey and/or Cradle of Filth, composed and contributed their performances to multiple commercially released sound recordings, specifically including the Recordings (defined herein).

8.      Throughout this time, Plaintiffs Federoff, Smerda, and Matheson, never signed or executed any agreement with Defendants regarding the performances by Plaintiffs Federoff, Smerda, and Matheson in collaborative sound recordings.

9.      Plaintiffs Smerda, Shaw, and Matheson were not compensated for their performances in sound recordings on the 2017 Release (defined herein).

10.      Plaintiffs Smerda and Shaw were not compensated for their performances in sound recordings on the 2021 Release (defined herein).

11.      Plaintiffs Smerda and Matheson were not compensated for their performances in sound recordings on the 2023 Release (defined herein).

12.      Plaintiff Shaw *was* compensated for his performances in sound recordings on the 2023 Release by Defendant Cradle of Filth, Touring Entity, Oracle, and/or Davey, in the amount of five hundred British pounds (£500).

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

13. Plaintiffs Federoff and Smerda were not compensated for their performances in sound recordings on the 2025 Release (defined herein).

14. Throughout this time, Plaintiff Federoff and Plaintiff Smerda never signed or executed any agreement with Defendants regarding the use of Plaintiffs' names, likenesses, related to meet and greets.

15. In 2014, Plaintiff Matheson created certain copyright works, the Sigils (defined herein).

16. Following the creation of the Sigils, Plaintiff Matheson never granted the rights or otherwise authorized the use of the Sigils by Defendants.

17. Defendants used, and continue to use, the Sigils in Sigil Merchandise (defined herein), artwork, and for other commercial uses, without Plaintiff Matheson's authorization.

18. Plaintiff Baxter performed in two Music Videos (defined herein) synchronized to sound recordings, which Defendants organized, produced, and commercially exploited.

19. Defendants did not compensate Plaintiff Baxter for the performances in the Music Videos.

20. Following Plaintiff Baxter's performance in the music videos, Defendants produced and sold Merchandise featuring Plaintiff Baxter's likeness, without any authorization.

21. After years of collaboration with Plaintiffs Smerda and Federoff, Defendant Davey offered to enter into a contract with them regarding the exclusive rights to their

likenesses and images, their performances in sound recordings, and their rights regarding meet and greets.

22.    Prior to this, Plaintiffs Smerda and Federoff were not offered to enter into a contract regarding their exclusive rights to Plaintiffs' likenesses and images, their performances in applicable sound recordings, and their rights regarding meet and greets

23.    Plaintiffs Smerda and Federoff considered the offered contract terms highly unfavorable and declined to enter into the agreement.

24.    The collaboration and association between Plaintiffs Smerda and Federoff, Defendant Davey and/or Cradle of Filth ended in or about August of 2025.

25.    Following the disassociation of Plaintiff Smerda and Plaintiff Federoff from Defendants Davey and/or Cradle of Filth, Defendants did not compensate Plaintiff Smerda and Plaintiff Federoff for the final live performances with Defendants Davey and/or Cradle of Filth.

26.    Following the end of the collaboration and association of Plaintiff Smerda and Plaintiff Federoff with Defendants Davey and/or Cradle of Filth, Defendants have continued to commercially exploit and profit from Plaintiff Smerda's and Plaintiff Federoff's likenesses and images in Merchandise and their performances in sound recordings.

27.    Following the end of the collaboration and association of Plaintiffs Federoff, Smerda, Shaw, and Matheson with Defendants Davey and/or Cradle of Filth, Defendants have continued to commercially exploit and profit from their performances in sound recordings, specifically including the Recordings.

28.    Following the end of the collaboration and association between Plaintiffs with Defendants Davey and/or Cradle of Filth, Defendants have continued to commercially exploit and profit from Plaintiffs' likenesses and images in Merchandise.

29.    Following the departure and disassociation of Plaintiffs Smerda and Federoff from Defendants Davey and/or Cradle of Filth, Defendant Davey engaged in defamatory attacks on Plaintiffs Smerda and Federoff, impugning their professional reputations in the music industry.

30.    Defendant Davey publicly stated that Plaintiff Federoff drank alcohol while pregnant, implying that Plaintiff Federoff's tragic miscarriage was caused by alcohol consumption.

31.    This action arises out of Defendants unauthorized use and/or commercial exploitation of Plaintiffs' likenesses and images in Merchandise, Plaintiffs Federoff's, Smerda's and Matheson's performances in the Recordings, Plaintiff Federoff's personal property, Plaintiff Baxter's performances in Music Videos, and Plaintiff Matheson's copyrighted works, as well as the disparagement of Plaintiffs Federoff and Smerda following their discontinuation of involvement with Defendants.

## THE PARTIES

32.    Plaintiffs Federoff, Smerda, and Allender are individuals residing in the State of Arizona.

33.    Plaintiff Baxter is an individual residing in the State of California.

34.    Plaintiff Shaw is an individual residing in England, United Kingdom.

35.    Plaintiff Lindsay Matheson is an individual residing in Ontario, Canada.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

36. Defendant Cradle of Filth is a privately held company existing in the United Kingdom with its headquarters in London.

37. Defendant Oracle is a for-profit corporation incorporated in the State of California with a principal address at 12100 Wilshire Blvd., Suite 1540 Los Angeles, CA 90025.

38. Defendant Touring Entity is a privately held company incorporated in the United Kingdom with its headquarters in London. Upon information and belief, Defendant Touring Entity is a subsidiary or member of Defendant Cradle of Filth.

39. Defendant Davey is an individual, residing in the United Kingdom. Upon information and belief, Defendant Davey is member of Defendant Cradle of Filth.

**JURISDICTION AND VENUE**

40. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1125, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

41. For a court to exercise personal jurisdiction over an out-of-state corporate defendant, the court must have general jurisdiction or specific jurisdiction over the defendant. See *International Shoe v. Washington,* 326 U.S. 310 (1945).

42. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).

43.    A court may exercise specific jurisdiction over a defendant when: (1) the defendant "purposefully avails itself of the privilege of conducting activities" within the forum state; and (2) the defendant's contacts with the forum give rise to, or are related to, the plaintiff's claims. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 353 (2021).

44.    This Court has personal jurisdiction over Defendants Touring Entity, Cradle of Filth, and Davey pursuant to Federal Rule of Civil Procedure, Rule 4(k)(2) because they: (i) are not subject to jurisdiction in any single state's courts of general jurisdiction, (ii) each have purposefully directed their activities at the United States, this State, and this District, and (iii) each have purposefully availed itself of the benefits of doing business in the United States, this State, and this District as detailed below:

a.    On October 20, 2021, Plaintiff Smerda, Plaintiff Shaw, and Defendants Cradle of Filth and Davey performed at a music venue, *Marquee Theatre*, located in this State with an address of 730 N Mill Ave, Tempe, AZ 85288, where, upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey sold and profited from the sales of Merchandise and Recordings.

b.    On May 8, 2022, Plaintiffs Federoff and Smerda and Defendants Cradle of Filth and Davey performed at a music venue, *Mesa Amphitheatre*, located in this State with an address of 263 N Center St, Mesa, AZ 85201, where, upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey sold and profited from the sales of Merchandise and Recordings.

c.    On March 8, 2023, Plaintiffs Federoff and Smerda and Defendants Cradle of Filth and Davey performed at a music venue, *Marquee Theatre* (the "**Marquee Theatre**

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

**Performance**"), located in this State with an address of 730 N Mill Ave, Tempe, AZ 85288, where, upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey sold and profited from the sales of Merchandise and Recordings.

d.   Defendant Oracle was present at the Marquee Theatre Performance in this State on March 8, 2023, where, upon information and belief, Defendant Oracle profited from, and facilitated, directed, or otherwise participated in, selling Merchandise, and/or Recordings.



e.   On Oct 5, 2023, Plaintiffs Federoff and Smerda and Defendants Cradle of Filth and/or Davey performed at a music venue, *Encore* (the "**Encore Performance**"), located in this State with an address of 5851 E Speedway Blvd, Tucson, AZ 85712, where,

- 9 -

upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey sold and profited from the sales of Merchandise and Recordings.

f. Defendant Oracle was present at the Encore Performance in this State on October 5, 2023, where, upon information and belief, Defendant Oracle profited from, and facilitated, directed, or otherwise participated in, selling Merchandise, and/or Recordings.



g. On April 20, 2025, Plaintiffs Federoff and Smerda and Defendants Cradle of Filth and Davey performed at a music venue, *The Van Buren*, located in this State with an address of 401 W Van Buren St, Phoenix, AZ 85003, where, upon information and belief,

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

Defendants Cradle of Filth, Touring Entity, and/or Davey sold and profited from the sales of Merchandise and Recordings.

h. Upon information and belief, Defendant Davey and/or Cradle of Filth have previously performed at music venues in this State, with and/or without Plaintiffs.



45. Upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey sold Merchandise containing the likenesses of each Plaintiff at one or more of the shows described above.

46. This Court has general personal jurisdiction over Defendant Oracle because Defendant Oracle's affiliations with this State are so continuous and systematic as to render

it at home in this State and this District, *see International Shoe*, 326 U.S. 310, at 317, as detailed below:

    a.  Upon information and belief, Defendant Oracle and Defendants Cradle of Filth, Touring Entity, and/or Davey are engaged in an agreement wherein Defendant Oracle receives a share of the profits obtained by Defendants Cradle of Filth, Touring Entity, and/or Davey.

    b.  Upon information and belief, Defendant Oracle facilitates and/or negotiates contracts, agreements, or other business opportunities on behalf of or for the benefit of Defendants Cradle of Filth, Touring Entity, and/or Davey.

    c.  Upon information and belief, Defendant Oracle was party to, participated in, facilitated the execution of and/or negotiated agreements for any or all performances in this State, including but not limited to the performances mentioned herein, directly or indirectly.

    d.  Defendant Oracle was present at the Marquee Theatre Performance in this State.

    e.  Upon information and belief, Defendant Oracle profited from, and facilitated, directed, or otherwise participated in, selling Merchandise, and/or Recordings at the Marquee Theatre Performance in this State on March 8, 2023.

    f.  Defendant Oracle was present at the Encore Performance in this State.

    g.  Upon information and belief, Defendant Oracle profited from, and facilitated, directed, or otherwise participated in, selling Merchandise, and/or Recordings at the Encore Performance in this State on October 5, 2023.

**DELGADO ENTERTAINMENT LAW, PLLC**
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

h. Upon information and belief, Defendant Oracle received profits from the sales of Merchandise and/or Recordings at any or all performances in this State, including but not limited to the performances mentioned herein, directly or indirectly, including but not limited to by, through or under any agreement Defendant Oracle has entered with Defendant Davey and/or Cradle of Filth.

i. Upon information and belief, Defendant Oracle received profits from ticket sales for any or all performances in this State, including but not limited to the performances mentioned herein, directly or indirectly, including but not limited to by, through or under any agreement Defendant Oracle has entered with Defendant Davey and/or Cradle of Filth.

47. This court has specific personal jurisdiction over Defendant Oracle because Defendant Oracle "purposefully avails itself of the privilege of conducting activities" within the forum state, and Defendant's contacts with the forum give rise to, or are related to, Plaintiffs' claims, *see Ford Motor Co.,* 592 U.S. 351, 353 (2021), as detailed below:

a. Defendant Oracle travelled to the Marquee Theatre Performance in this State for the purpose of conducting business for and/or with Defendants Cradle of Filth and Davey, including the sale of Merchandise and/or Recordings.

b. Defendant Oracle travelled to the Encore Performance in this State for the purpose of conducting business for and/or with Defendants Cradle of Filth and Davey, including the sale of Merchandise and/or Recordings.

c. Upon information and belief, Defendant Oracle organized, facilitated, directed, or otherwise participated in the sale of Merchandise and/or Recordings, directly or indirectly, at other performances in this State, either remotely or in person.

d. Plaintiffs' claims arise from the unauthorized commercial exploitation of Merchandise and/or Recordings by Defendants, including Defendant Oracle.

48.    For the purposes of venue, a defendant not residing in the United States may be sued in any judicial district, however, "the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." 28 U.S. Code § 1391(c)(3).

49.    Venue is proper for Defendants Touring Entity, and Cradle of Filth because the entities exist and/or are organized or incorporated in the United Kingdom and are therefore not residents of the United States. See *id*.

50.    Venue is proper for Defendant Davey because Defendant Davey is a resident of the United Kingdom, and therefore not a resident of the United States.

51.    Venue for Defendant Oracle must be determined independently from the other Defendants, because the joinder of Defendants Touring Entity, Cradle of Filth, and Davey shall be disregarded in determining where the action may be brought with respect to Defendant Oracle. See 28 U.S. Code § 1391(c)(3).

52.    A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S. Code § 1391(b)(1).

53.    For all purposes of venue, a defendant entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S. Code § 1391(c)(2)

54.    For purposes of venue Oracle is deemed to reside in this District because this Court has personal jurisdiction over Oracle with respect to this civil action. See 28 U.S.C. § 1391(c)(2).

55.    Disregarding Defendants Touring Entity, Cradle of Filth, and Davey as required under 28 U.S.C. § 1391(c)(3), venue is proper in this District because the remaining defendant, Oracle, is deemed to reside in this District for purposes of venue under 28 U.S.C. § 1391(c)(2), as this Court has personal jurisdiction over Oracle with respect to this action. See 28 U.S.C. § 1391(b)(1)."

## FACTUAL BACKGROUND

56.    Between 1992 to 1995 and 1999 to 2014, Plaintiff Allender composed, performed and/or recorded with Defendant Davey and Cradle of Filth.

57.    Between 2013 and 2019, Plaintiff Matheson composed, performed and/or recorded with Defendant Davey and Cradle of Filth.

58.    Between 2014 and 2022, Plaintiff Shaw composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

59.    Between 2014 and 2025, Plaintiff Smerda composed, performed and/or recorded with Defendant Davey and Cradle of Filth.

60.    Between 2022 and 2025, Plaintiff Federoff composed, performed and/or recorded with Defendants Davey and Cradle of Filth.

61.    Plaintiff Matheson and Defendants never entered into any written or verbal contract or agreement authorizing the use of Plaintiff Matheson's copyrighted Sigils (defined herein).

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

62.    Plaintiffs and Defendants never entered into any written or verbal contract or agreement with Defendants Davey, Cradle of Filth, and/or Oracle authorizing the use of Plaintiffs' likenesses or images in any Merchandise.

63.    Plaintiffs Federoff, Smerda, and Matheson never entered into any written or verbal contract with Defendants regarding the ownership and/or administration of any of the Recordings.

64.    Plaintiff Shaw never entered into any written or verbal contract with Defendants regarding ownership and/or administration of the 2017 Release and the 2021 Release.

**A.    Defendants' Infringement of Copyrighted Sigils**

65.    On or about April 14, 2014, Plaintiff Matheson created a set of original graphic works (the "**Sigils**").



- 16 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657





66.     Plaintiff Matheson was issued a Copyright Certificate of Registration from the Canadian Intellectual Property Office for the Sigils, with a Registration Number 1237363. *See* Exhibit A.

67.     The Sigils were first published in Whitby, Ontario, Canada. *See id*.

68.     Plaintiff Matheson did not grant Defendants the rights to use, copy, modify, display, create derivative works of, license, or otherwise commercially exploit the Sigils.

69.     Defendants have infringed on Plaintiff Matheson's rights to the Sigils by copying and creating derivative works of the Sigils in merchandise (the "**Sigil Merchandise**"), including but not limited to clothing, posters, and stickers directly featuring the Sigils.

- 17 -

[intentionally left blank]





DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657





70.     Upon information and belief, Defendants continue to infringe on Plaintiff Matheson's copyrights in the Sigils by producing, manufacturing, selling, or otherwise commercially exploiting Sigil Merchandise without Plaintiff Matheson's authorization.

71.     Upon information and belief, Defendants have negotiated and entered licensing agreement(s) with third parties to copy, create derivative works of, produce, manufacture, sell, or otherwise commercially exploit the Sigils.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657





DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

72. Plaintiff Matheson never granted rights to the Sigils or otherwise authorized Defendants to license the Sigils to third parties.

73. Plaintiff Matheson never granted Defendants the rights to license any rights to the Sigils to third parties to copy, create derivative works of, or otherwise commercially exploit the Sigils.

### B. Defendants' Non-Payment for Performances in Music Videos

74. Plaintiff Baxter is a professional model, whose work includes performing in music videos, performing at music festivals and shows, appearing at horror conventions, and hosting nightclubs and events.

75. Defendants organized, produced, and created music videos ("**Music Videos**") synchronized with certain sound recordings featuring performances by Plaintiff Baxter.

76. On or about October 22, 2024, Defendants released a Music Video for the sound recording and embodied composition entitled *Malignant Perfection*, which featured performances by Plaintiff Baxter.

77. On or about February 20, 2025, Defendants released a Music Video for the sound recording and embodied composition entitled *To Live Deliciously*, which featured performances by Plaintiff Baxter.

78. Plaintiff Baxter and Defendants never entered into any written agreement regarding Plaintiff Baxter's performances in the Music Videos.

79. Plaintiff Baxter and Defendants never paid or otherwise compensated Plaintiff Baxter for the performances in the Music Videos.

80.    Following Plaintiff Baxter's performances in the Music Videos, Defendants began to produce, manufacture, and/or commercially exploit Merchandise featuring Plaintiff Baxter's likenesses and images.

**C.    Defendants' Manufacture and Sale of Unauthorized Merchandise**

81.    Throughout the periods of collaboration with Plaintiffs, Defendants Cradle of Filth and/or Touring Entity, either directly or by and through their agents, produced and sold merchandise bearing Plaintiffs' likenesses and images (the "**Merchandise**"), including but not limited to clothing and photographs of Plaintiffs (see representative samples below).



DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657



## Cradle Of Filth - Utterly Filthy - Tee

Official Cradle of Filth Merchandise.

Size

SMALL  MEDIUM  LARGE

XL  XXL  3XL





82.    In a correspondence dated September 10, 2025, counsel for Defendant Oracle confirmed that Defendant Touring Entity executed a licensing agreement (the "**Night Shift Master Licensing Agreement**") with a third-party to produce Merchandise featuring Plaintiffs' likenesses and images.

83.    Plaintiffs are not party to the Night Shift Master Licensing Agreement.

84.    Plaintiffs were unaware of the Night Shift Master Licensing Agreement prior to this correspondence.

85.    In the same correspondence, Defendant Oracle's counsel also noted that other third parties have been selling Merchandise with the authorization of one or more Defendants.

86.    On or about September 23, 2025, Plaintiffs requested a copy of the Night Shift Master Licensing Agreement from Defendants.

87.    On or about September 30, 2025, Defendants Cradle of Filth, Touring Entity, and/or Davey explicitly confirmed, through counsel, their refusal to provide a copy of the Night Shift Master Licensing Agreement.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

88.    Defendants never provided Plaintiffs with any copy of the Night Shift Master Licensing Agreement.

89.    Plaintiffs are still unaware of the specific terms of the Night Shift Master Licensing Agreement because Defendants have never allowed Plaintiffs to review or obtain the Night Shift Master Licensing Agreement.

90.    Upon information and belief, Defendants granted the rights to use Plaintiffs' likenesses and images in the Night Shift Master Licensing Agreement, without the authorization or consent of Plaintiffs.

91.    However, Defendants did not receive authorization or consent from Plaintiffs in order to sell Merchandise containing their likeness and images.

92.    Upon information and belief, third parties continue to sell Merchandise containing Plaintiffs' likeness and images under licensing agreements with Defendants, without Plaintiffs' authorization or consent.

93.    Defendants Cradle of Filth and/or Touring Entity directly profited from the sale of the Merchandise sold online (see representative examples below).

94.    Upon information and belief, Defendants Cradle of Filth and/or Touring Entity continue to profit from the sale of the Merchandise sold online.

95.    Defendants Cradle of Filth and/or Touring Entity directly profited from the sale of the Merchandise at in-person Performances.

96.    Upon information and belief, Defendants Cradle of Filth and/or Touring Entity and continue to profit from the sale of the Merchandise at in-person Performances.

97.    Defendants Cradle of Filth and/or Touring Entity directly profited from, and continue to profit, from the sale of the Merchandise sold through third-party retailers.



DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

nightshiftmerch.com

**NIGHTSHIFT** MERCHANDISE

WORLDWIDE SHIPPING
Free US shipping on orders over $100

**CRADLE OF FILTH – NON OMNIS MORIAR T–SHIRT**

$24.99

SIZE

| S | M | L | XL | 2XL | 3XL |

cradleoffilth.probitymerch.com

**Cradle Of Filth - B&W Band - Tee**

Official Cradle of Filth Merchandise.

Size

| SMALL | MEDIUM | LARGE |
| XL | XXL | 3XL |

cradleoffilth.probitymerch.com

**Cradle Of Filth - By Order Tour - Tee**

Official Cradle of Filth Merchandise.

Size

| SMALL | MEDIUM | LARGE |

cradleoffilth.probitymerch.com

**Cradle Of Filth - Horror Poster Euro Tour - Tee**

Official Cradle of Filth Merchandise.

Size

| SMALL | MEDIUM | LARGE |

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657





98.     Upon information and belief, Defendants and/or third parties, directly or through licensing agreements, have profited and continue to profit from the sale of the Merchandise.

99.    Despite Plaintiffs' requests, Defendants have repeatedly denied Plaintiffs any access to accounting statements, sales records, and any licensing agreements pertaining to the Merchandise.

100.    Defendants' refusal to seek permission, provide access to accounting statements, sales records, and any licensing agreements for Merchandise featuring Plaintiffs' likenesses and images violates Plaintiffs' publicity rights and allows Defendants to be unjustly enriched.

101.    Upon information and belief, Defendants intentionally did this to ensure no interference by Plaintiffs.

102.    Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' consent or authorization.

103.    Upon information and belief, Defendants Cradle of Filth and/or Touring Entity continue to directly profit from the sale of Merchandise that features the Plaintiffs' likenesses and images.

104.    The ongoing profit by Defendants of Merchandise featuring Plaintiffs' likenesses and images violates Plaintiffs' publicity rights and unjustly enriches the Defendants.

**D.    Defendants' Refusal to Provide Accounting for Meet and Greets**

105.    Defendants promoted and marketed VIP ticket sales and meet and greets using the likenesses and images of Plaintiffs Smerda and Federoff.

- 28 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

106. At no time did Plaintiffs Federoff and Smerda authorize, consent to, or license Defendants to use Plaintiffs' names, likenesses, or images in connection with the promotion, marketing, or sale of VIP ticket packages or meet and greets.



107. Defendants have continually denied Plaintiffs Federoff and Smerda access to any agreements pertaining to the meet and greets, or any accounting of revenue earned from meet and greets, including but not limited to the increased ticket prices for meet and greets featuring Plaintiffs Federoff and Smerda.

108. Upon information and belief, Defendants have been unjustly enriched by the increased ticket prices for meet and greets featuring Plaintiffs Federoff and Smerda.

109. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements, for meet and greets profiting from Plaintiff Federoff's and Plaintiff Smerda's likenesses and images, violates their publicity rights and allows Defendants to be unjustly enriched without interference.

E.    **Defendants' Unauthorized Exploitation of Recordings Featuring Plaintiffs' Performances**

110.    The performances by Plaintiffs Smerda, Matheson, and Shaw in the 2017 Release are prominent and are featured throughout most, if not all, individual sound recordings on the 2017 Release.

111.    Plaintiffs Smerda, Matheson, and Shaw never expressly authorized the release and/or commercial exploitation of the 2017 Release featuring their performances.

112.    Plaintiffs Smerda, Matheson, and Shaw have not been compensated for their performances in the sound recordings on the 2017 Release.

113.    At no time did Plaintiffs Smerda, Shaw, or Matheson waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2017 Release.

114.    Defendants have continually denied Plaintiffs Smerda, Shaw, and Matheson access to a full accounting of royalties earned from the 2017 Release.

115.    Defendants had, and continue to have, a duty to provide Plaintiffs Smerda, Shaw and Matheson with regular and accurate royalty accountings for the exploitation of the 2017 Release.

116.    Defendants have continually denied Plaintiffs Smerda, Shaw and Matheson access to any licensing agreements pertaining to the 2017 Release, or any accounting of royalties earned from the 2017 Release.

117.    Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2017 Release

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

featuring the performances of Plaintiffs Smerda, Shaw, and Matheson violates their rights in revenue generated from their performances.

118. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Smerda, Shaw, and Matheson in the 2017 Release without their consent or authorization.

119. The performances by Plaintiffs Smerda and Shaw in the 2021 Release are prominent and are featured throughout most, if not all, individual sound recordings on the 2021 Release.

120. Plaintiffs Smerda and Shaw never expressly authorized the release and/or commercial exploitation of the 2021 Release featuring their performances.

121. Plaintiffs Smerda and Shaw have not been compensated for their performances in the sound recordings on the 2021 Release.

122. At no time did Plaintiffs Smerda or Shaw waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2021 Release.

123. Defendants have continually denied Plaintiffs Smerda and Shaw access to a full accounting of royalties earned from the 2021 Release.

124. Defendants had, and continue to have, a duty to provide Plaintiffs Smerda and Shaw with regular and accurate royalty accountings for the exploitation of the 2021 Release.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

125. Defendants have continually denied Plaintiffs Smerda and Shaw access to any licensing agreements pertaining to the 2021 Release, or any accounting of royalties earned from the 2021 Release.

126. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2021 Release featuring the performances of Plaintiffs Smerda and Shaw violates their rights in revenue generated from their performances.

127. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Smerda and Shaw in the 2021 Release without their consent or authorization.

128. Upon information and belief, the sound recordings in the 2023 Release were recorded during live performances at venues between 2014 and 2019.

129. The performances by Plaintiff Smerda, Plaintiff Shaw, and Plaintiff Matheson in the 2023 Release are prominent and are featured throughout most, if not all, individual sound recordings on the 2023 Release.

130. Plaintiffs Smerda and Matheson never expressly authorized the release and/or commercial exploitation of the 2023 Release featuring their performances.

131. Plaintiffs Smerda and Matheson have not been properly credited for their performances in the 2023 Release.

132. After recording the 2023 Release, Plaintiff Shaw ceased association with the Defendants.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

133. Plaintiff Shaw received five hundred British pounds (£500) for Plaintiff Shaw's performances on the 2023 Release.

134. Plaintiffs Smerda and Matheson have not been compensated for their performances in the sound recordings on the 2023 Release.

135. Upon information and belief, Defendants refused to pay Plaintiff Smerda, Plaintiff Matheson and most other performers on the 2023 Release entirely.

136. At no time did Plaintiffs Smerda or Matheson waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2023 Release.

137. Defendants have continually denied Plaintiffs Smerda and Matheson access to a full accounting of royalties earned from the 2023 Release.

138. Defendants had, and continue to have, a duty to provide Plaintiffs Smerda and Matheson with regular and accurate royalty accountings for the exploitation of the 2023 Release.

139. Defendants have continually denied Plaintiffs Smerda and Matheson access to any licensing agreements pertaining to the 2023 Release, or any accounting of royalties earned from the 2023 Release.

140. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2023 Release featuring the performances of Plaintiffs Smerda and Matheson violates their rights in revenue generated from their performances.

141. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

performances of Plaintiffs Smerda and Matheson in the 2023 Release without their consent or authorization.

142. The performances by Plaintiffs Federoff and Smerda in the 2025 Release are prominent and are featured throughout most, if not all, individual sound recordings on the 2025 Release.

143. Plaintiffs Smerda, Matheson, and Shaw never expressly authorized the release and/or commercial exploitation of the 2025 Release featuring their performances.

144. Plaintiffs Federoff and Smerda have not been compensated for their performances in the sound recordings comprising the 2025 Release.

145. At no time did Plaintiffs Federoff or Smerda waive any rights to royalties, accounting, or other benefits to which they are entitled from Defendants' commercial exploitation of the 2025 Release.

146. Defendants have continually denied Plaintiffs Federoff and Smerda access to a full accounting of royalties earned from the 2025 Release.

147. Defendants had, and continue to have, a duty to provide Plaintiffs Federoff and Smerda with regular and accurate royalty accountings for the exploitation of the 2025 Release.

148. Defendants have continually denied Plaintiffs Federoff and Smerda access to any licensing agreements pertaining to the 2025 Release, or any accounting of royalties earned from the 2025 Release.

149. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements for the commercial exploitation of the 2025 Release

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

featuring the performances of Plaintiffs Federoff and Smerda violates their rights in revenue generated from their performances.

150.    Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the performances of Plaintiffs Federoff and Smerda in the 2025 Release without their consent or authorization.

151.    In June 2025, Plaintiffs Federoff and Smerda, Defendant Davey, and other individual musicians composing, recording, and performing with Defendant Cradle of Filth and Davey entered into a publishing agreement with Peer Music (the "**Publishing Agreement**").

152.    Upon information and belief, Defendant Oracle and/or its representative or agent negotiated or facilitated the execution of the Publishing Agreement.

153.    Upon information and belief, Defendant Oracle and/or its representatives, members, or agents have negotiated or facilitated the execution of other agreements for or on behalf of Defendants Cradle of Filth, Touring Entity, and Davey.

154.    Defendant Oracle, and Oracle representative Dez Fafara, were not party to the Publishing Agreement, and were not otherwise entitled to any royalties obtained thereunder.

155.    On or about July 10, 2025, Dez Fafara, on behalf of Oracle, sent a group message to Plaintiffs and other individuals performing with Defendant Cradle of Filth in a group that each recipient made £4,800 and "after legal and commissions [each individual party to the contract] made 3400."

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657



156.    After significant resistance and delay by Defendant Oracle and/or its authorized agents, representatives, or members, Plaintiffs Federoff and Smerda were ultimately able to obtain the unauthorized portion of the publishing royalties under the Publishing Agreement, despite the efforts of Defendant Oracle to obtain said royalties without authorization.

157.    Plaintiffs do not know whether Defendants have received a share of any publishing royalties to which Plaintiffs are entitled during or since their association with Defendants.

158.    Upon information and belief, Defendants have refused and continue to refuse to provide Plaintiffs Federoff and Smerda with information on whether Defendants have obtained publishing royalties owed to Plaintiffs.

**F.      Defendant Davey's Destruction of Plaintiff Federoff's Audio Equipment**

159.    Plaintiff Federoff exclusively and personally owned a Sennheiser EW 500-945 G4 Wireless Handheld Microphone System (the "**Microphone**"), valued at over $1,000, and a set of UE 18+ PRO custom molded in-ear monitors produced by Ultimate Ears (the "**IEMs**", together with the Microphone, the "**Audio Equipment**"), valued at over $1,500.

160.    On or about December 8, 2024, a tour manager (the "**Tour Manager**") took the hard case containing Plaintiff Federoff's Microphone, without consent or authorization.

161.    Upon information and belief, the Tour Manager was acting on behalf of Defendants Cradle of Filth, Touring Entity, and/or Davey.

162.    Upon information and belief, the Tour Manager gave the Microphone to Defendant Davey for use in a performance, without Plaintiff Federoff's consent or authorization.

163.    Upon information and belief, Defendant Davey irreparably damaged the Microphone, rendering it non-functional and unusable.

164.    Defendants never compensated Plaintiff Federoff for the Microphone.

165.    Defendants never compensated Plaintiff Federoff for depriving Plaintiff Federoff of use of the Microphone.

166.    Plaintiff Federoff's IEMs were kept in the same hard case as the Microphone.

167. Plaintiff Federoff's IEMs were never returned by the tour manager or any Defendants.

168. Upon information and belief, Defendants either still possess the IEMs, or have irretrievably lost the IEMS.

169. Defendants never compensated Plaintiff Federoff for depriving Plaintiff Federoff from the IEMs.

**G.    Plaintiffs Federoff's and Smerda's Disassociation from Defendants**

170. Defendant Davey, either individually or through counsel, offered to enter a written contract (the "**Offer**") with Plaintiffs Federoff and Smerda that, if signed, would have granted Defendant Davey "the exclusive right to use [Plaintiff or Plaintiffs] name, approved likenesses, and approved biography for commercial exploitation."

171. This Offer also would grant Defendant Davey the right to contributions from Plaintiffs Federoff and Smerda to future sound recordings and compositions.

172. Plaintiffs Federoff and Smerda refused Defendant Davey's Offer.

**H.    Defendants' Refusal to Pay Plaintiffs Federoff and Smerda for Final Live Performances**

173. On or about August 21, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Mirrhage* in Limeira, Brazil (the "**August 21 Performance**").

174. On or about August 22, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Tork N' Roll* in Curitiba, Brazil (the "**August 22 Performance**").

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

175. On or about August 23, 2025, Plaintiffs Federoff and Smerda performed with Defendant Cradle of filth and/or Davey at *Carioca Club* in São Paulo, Brazil (the "**August 23 Performance**").

176. On or about August 24, 2025, Plaintiff Federoff discontinued performing and recording with Defendants Cradle of Filth and Davey.

177. On or about August 24, 2025, Plaintiff Smerda performed with Defendant Cradle of filth and/or Davey at *Groove* in Buenos Aires, Argentina (the "**August 24 Performance**", together with the August 21 Performance, the August 22 Performance, and the August 23 Performance, the "**Live Performances**").

178. On or about August 26, 2025, Defendants prohibited Plaintiff Smerda from further performing and recording with Defendants.

179. Plaintiff Smerda was prepared to perform with Defendants Cradle of Filth and/or Davey at a scheduled performance on August 26, 2025.

180. Defendants have not compensated Plaintiffs Federoff and Smerda for the Live Performances.

181. Defendants refuse to compensate Plaintiffs Federoff and Smerda for the Live Performances.

182. Defendants' forced removal of Plaintiff Smerda from collaboration caused reputational harm to Plaintiff Smerda in the music industry generally, as well as the heavy metal industry specifically.

**I.    Defamation of Plaintiffs Federoff and Smerda Following Disassociation from Defendants**

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

- 39 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

183.    On or about August 29, 2025, after Plaintiffs Federoff and Smerda discontinued association with Defendants, Defendants Davey and/or Cradle of Filth, through an official Cradle of Filth social media account, publicly posted a message (the "**Post**") on social media about the discontinued association of Plaintiffs from Defendants (see below).



184.    In the Post, Defendant Davey stated that Plaintiffs Federoff and Smerda engaged in physical and verbal abuse.

185.    In the Post, Defendant Davy stated that Plaintiffs Federoff and Smerda were engaged in "heated exchanges," including "a pattern of abusive behavior that strained the entire team."

186.    In the Post, Defendant Davey directly stated and/or implied that Plaintiff Federoff consumed alcohol while pregnant, facetiously asking the loaded question, "if [Plaintiff Federoff was pregnant, why was she drinking at all?"



187.    Defendant Davey's statement about Plaintiff Federoff drinking while pregnant suggests, implies, and/or states that Plaintiff Federoff's drinking while pregnant was causally connected to her miscarriage.

188.    Defendant Davey's statements about Plaintiff Federoff drinking while pregnant were untrue.

189.    Defendant Davey's statement about Plaintiff Federoff drinking while pregnant has caused significant harm to Plaintiff Federoff's reputation in the music industry, her community, and beyond.

190.    Defendant Davey's statement about Plaintiff Federoff drinking while pregnant has caused Plaintiff Federoff harm, including reputational damages and loss of employment opportunities.

191.    In the Post, Defendant Davey stated that Plaintiff Smerda has alcoholism, referring to "Ashok's alcoholism."



192.    Along with the same Post, Defendant Davey attached out-of-context messages between Plaintiff Smerda and another party (see below).



193.    Upon information and belief, the party that Plaintiff Smerda messaged was Dez Fafara, or another authorized representative, agent, or affiliate of Defendant Oracle.

194.    In the same Post, Defendant Davey mischaracterized the out-of-context messages attached to the post, stating that Plaintiff Smerda "went after the Royal family of heavy metal" by mischaracterizing statements referencing the esteemed wife of renowned, recently deceased heavy metal progenitor and co-founder of the legendary musical group Black Sabbath, John Michael  "Ozzy" Osbourne, who Defendant Davey refers to as "Ozzy's wife," Sharon Osbourne.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ  85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

195. Defendant Davey's public mischaracterization of these out-of-context messages caused Plaintiff Smerda significant reputational harm and employment opportunity in the music industry.

196. Defendant Davey's mischaracterization of this message about Sharon Osbourne is particularly harmful to Plaintiff Smerda's reputation in the heavy metal community and the music industry generally due to the recency of the passing of Ozzy Osbourne.

197. Defendant Davey's statements in the Post were untrue.

198. Defendant Davey's statements in the Post caused reputational harm to Plaintiffs Federoff and Smerda.

199. Defendant Davey's false statements in the Post have caused Plaintiffs Federoff and Smerda ongoing harm, including reputational harm and loss of employment opportunities.

200. Defendants' ongoing commercial exploitation of the Recordings, including profit obtained from performances in the Recordings, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits.

201. Defendants' ongoing commercial exploitation of the Merchandise, including profit obtained from the sales of the Merchandise containing Plaintiffs' likeness and images, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits.

## COUNT 1: False Designation of Origin—15 U.S. Code § 1125

### (all Plaintiffs against all Defendants)

202. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

203. Any person who, on or in connection with any goods or services uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S. Code § 1125(a).

204. Plaintiffs never authorized, licensed, or consented to Defendants' production, manufacture, distribution, or commercial exploitation of the Merchandise goods, nor to any licensing of third parties to do so.

205. Defendants' unauthorized use of Plaintiffs' likenesses and images in connection with the Merchandise constitutes a false designation of origin and a false or misleading representation of fact under 15 U.S.C. § 1125(a)(1)(A).

206. Defendants' use of Plaintiffs' likenesses and images in connection with the Merchandise is likely to cause consumers to believe that Plaintiffs are affiliated with, sponsor, or endorse Defendants and their performances, when in fact they do not.

207. Defendants refused and continue to refuse Plaintiffs any accounting of commercial exploitation of the Merchandise.

208. Upon information and belief, Defendants sold and continue to sell Merchandise bearing the Plaintiffs' likenesses and images following Plaintiffs' disassociation from Defendants.

209. Upon information and belief, Defendant Touring Entity entered into licensing agreements with third parties alleging to grant the rights to produce, manufacture

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

210. Upon information and belief, Defendants Davey, Touring Entity, and Cradle of Filth has profited and continue to profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise.

211. Upon information and belief, Oracle was party to, participated in, facilitated the execution of and/or negotiated agreements to manufacture, sell, and/or produce Merchandise, or to otherwise use Plaintiffs' likenesses and images.

212. Upon information and belief, Oracle profited and continues to directly profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise through its agreement with Defendants Davey, Touring Entity and/or Cradle of Filth.

213. Upon information and belief, third parties who Defendant Touring Entity alleged to grant or license the rights to produce, manufacture or commercially exploit Merchandise featuring the Plaintiffs' likeness and images, without Plaintiffs' authorization or consent, sold and continue to sell said Merchandise without Plaintiffs' authorization or consent.

214. Upon information and belief, Defendants continue to profit from the sale of Merchandise by Defendants at performances that Plaintiffs are not associated with and via third-party retailers.

215. Since Defendants are fully aware that Plaintiffs have ceased any association with Defendants, any ongoing commercial exploitation of Plaintiffs' likenesses and images in Merchandise is willful and intentional.

216.    Defendants' sale of Merchandise has caused confusion, mistake, or deception as to the affiliation, connection, or association of Plaintiffs with Defendants.

217.    Defendants' continued sale of Merchandise is likely to cause further confusion, mistake, or deception as to the affiliation, connection, or association of Plaintiffs with Defendants.

218.    Plaintiffs have been harmed by Defendants' continued association with Plaintiffs via the sales of Merchandise bearing the Plaintiffs' likenesses and images.

219.    Defendants are liable to Plaintiffs for any unauthorized profit obtained by appropriating Plaintiffs' likenesses in Merchandise.

220.    Defendants are liable for damages caused to Plaintiffs by the commercial exploitation of the Merchandise, including but not limited to lost profits and reputational damages.

221.    Pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' damages, the costs of this action, and, because Defendants' conduct is willful, enhanced damages and attorneys' fees.

### COUNT 2: Copyright Infringement

### (Plaintiff Matheson against Defendants Cradle of Filth, Touring Entity, and Davey)

222.    Plaintiffs incorporate the foregoing allegations herein as if restated in full.

223.    Plaintiff Matheson is the exclusive copyright owner of the Sigils.

224.    The Sigils are registered with the Canadian Intellectual Property Office, Registration No. 1237363. *See* Exhibit A.

- 46 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

225.    The Sigils are foreign works because the Sigils were first published in Whitby, Ontario, Canada, and were not published simultaneously in the United States. *See id*; 17 U.S.C. § 101.

226.    The Sigils are exempt from the prerequisite for U.S. Copyright Registration to initiate civil action for copyright infringement of a U.S. work because the Sigils are foreign works. *See* 17 U.S.C. § 411(a).

227.    Defendants directly copied the Sigils onto designs for the Sigil Merchandise.

228.    Plaintiff Matheson never granted Defendants the right to create Sigil Merchandise containing Plaintiff Matheson's copyrighted works.

229.    Defendants copied the Sigils into marketing materials for the Sigil Merchandise.

230.    Plaintiff Matheson never granted Defendants the right to use the Sigil in marketing materials.

231.    Defendants created derivative works of the Sigils for use in the Sigil Merchandise.

232.    Plaintiff Matheson never granted Defendants the right to create derivative works of the Sigils.

233.    Defendants violated, and continue to violate, Plaintiff Matheson's exclusive copyrights in the Sigils by copying the Sigils into Sigil Merchandise and/or marketing materials. 17 U.S. Code § 106(1).

234.    Defendants violated, and continued to violate, Plaintiff Matheson's exclusive copyrights in the Sigils by creating derivative works of the Sigil. 17 U.S. Code § 106(2).

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

235. Upon information and belief, Defendants have profited, directly or indirectly, from the commercial exploitation, sale, and/or marketing of Sigil Merchandise containing Plaintiff Matheson's copyrighted Sigils.

236. Upon information and belief, Defendants continue to profit, directly or indirectly, from the commercial exploitation, sale, and/or marketing of Sigil Merchandise containing Plaintiff Matheson's copyrighted Sigils.

237. Plaintiff Matheson never authorized Defendants to commercially exploit or sell the Sigil Merchandise.

238. Plaintiff Matheson has not been compensated for Defendant's continued profits from the commercial exploitation of the Sigils.

239. Plaintiff Matheson has not been compensated for Defendant's continued profits from the Sigil Merchandise.

240. Plaintiff Matheson has been damaged by the Defendants' copyright infringement of the Sigils, including but not limited to lost profits.

241. Plaintiff Matheson seeks injunctive relief, destruction of any infringing materials containing the Sigils, actual damages, and Defendants' profits under § 504(b), and, to the extent permitted by law, an award of costs and attorneys' fees.

**COUNT 3: Right of Publicity/Misappropriation of Likeness**

**(against all Defendants)**

242. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

243. "[A]n individual has a right of publicity that protects his or her name and/or likeness from appropriation for commercial or trade purposes." *Reynolds v. Reynolds* (In re Estate of Reynolds), 235 Ariz. 80, 83 (Ct. App. 2014).

244. "[T]he tort of appropriation affords redress of commercial injuries." *Id*. at 82 (citing Restatement Third of Unfair Competition § 46 cmt. a.).

245. "[O]ne who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability" for resulting damages. *Id*. at 82 (quoting Restatement (Third) of Unfair Competition § 46).

246. Plaintiffs never authorized, licensed, or consented to Defendants' production, manufacture, distribution, or commercial exploitation of the Merchandise, nor to any licensing of third parties to do so.

247. Upon information and belief, Defendants sold and continue to sell Merchandise bearing the Plaintiffs' likenesses and images following Plaintiffs' disassociation from Defendants.

248. Defendants appropriated, and continue to appropriate, the commercial value of Plaintiffs' likenesses by selling Merchandise bearing the Plaintiffs' likenesses and images following Plaintiffs' disassociation from Defendants.

249. Upon information and belief, Defendant Touring Entity entered into licensing agreements with third parties alleging to grant the rights to produce, manufacture, and/or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

250. Upon information and belief, Defendant Oracle was party to, participated in, facilitated the execution of and/or negotiated agreements to produce, manufacture, and/or commercially exploit Merchandise featuring Plaintiffs' likenesses and images, without Plaintiffs' authorization or consent.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

251. Upon information and belief, Defendants appropriated, and continue to appropriate, the commercial value of Plaintiffs' likenesses by entering into licensing agreements with third parties for the production, sale, and/or commercial exploitation of Merchandise bearing the Plaintiffs' likenesses and images following Plaintiffs' disassociation from Defendants.

252. Upon information, Defendants Davey, Touring Entity, and Cradle of Filth have profited and continue to profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise.

253. Defendants did not consistently or transparently compensate Plaintiffs for the commercial exploitation of the Merchandise before Plaintiffs' disassociation.

254. Defendants refused and continue to refuse Plaintiffs any accounting of commercial exploitation of the Merchandise.

255. Defendants' continued misappropriation of Plaintiffs' likenesses and images has harmed Plaintiffs' reputations, goodwill, and ability to control the commercial value of their identities, and has caused both pecuniary and non-pecuniary injury.

256. Upon information and belief, Defendants continue to appropriate the commercial value of Plaintiffs' identities by using—without consent or authorization—Plaintiffs' names, likenesses, images, and other indicia of identity for purposes of trade

257. Upon information and belief, Defendants Davey, Touring Entity, and Cradle of Filth have profited and continue to profit from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise.

258. Upon information and belief, Defendant Oracle has an agreement with Defendants Davey, Touring Entity and/or Cradle of Filth under which Defendant Oracle

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

obtains a portion of profits obtained by Defendants Davey, Touring Entity and/or Cradle of Filth.

259.    Plaintiffs are not party to any agreement with Defendant Oracle that would entitle Defendant Oracle to any portion of Plaintiffs' profits.

260.    Upon information and belief, Oracle profited and continues to profit from the appropriation and commercial exploitation of Plaintiffs' likenesses and images in Merchandise through its agreement with Defendants Davey, Touring Entity and/or Cradle of Filth. *See Reynolds*, 235 Ariz. 80.

261.    Plaintiffs are entitled to Defendants' pecuniary gain resulting from the appropriation of Plaintiffs' likenesses in violation of Plaintiffs' publicity rights, and an injunction to prevent Defendants' continued appropriation of the commercial value of Plaintiffs' identities and likenesses. See *Reynolds*, at 83; See also *Skinner v. Tuscan Inc.*, No. CV-18-00319-TUC-RCC, 2020 U.S. Dist. LEXIS 186309, at ¶17 (D. Ariz. Oct. 7, 2020) (citing Restatement Third of Unfair Competition § 46-49).

262.    Because Defendants' conduct was willful, intentional, and undertaken with conscious disregard for Plaintiffs' rights, Plaintiffs are entitled to punitive and exemplary damages under Arizona law.

### **COUNT 4: Conversion**

**(Plaintiff Federoff against Defendants Cradle of Filth, Touring Entity, and Davey)**

263.    Plaintiffs incorporate the foregoing allegations herein as if restated in full.

264.    Plaintiff Federoff exclusively and personally owned and possessed the Microphone and the IEMs.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

265. Upon information and belief, the Tour Manager was acting on behalf of Defendants Cradle of Filth, Touring Entity, and/or Davey when the Tour Manager took the hard case containing the Microphone and IEMs, without Plaintiff Federoff's consent or authorization.

266. The Tour Manager's unauthorized taking and withholding of the Microphone and IEMs from Plaintiff Federoff's exclusive possession for Defendants Cradle of Filth, Touring Entity, and/or Davey was intentional.

267. Plaintiff Federoff never consented to or authorized the Tour Manager or Defendants Cradle of Filth, Touring Entity, and/or Davey to take, use, or exercise control over the Microphone or IEMs.

268. Defendants Cradle of Filth, Touring Entity, and/or Davey have refused to return the Microphone and, upon information and belief, Defendant Davey destroyed the Microphone.

269. Defendants Cradle of Filth, Touring Entity, and/or Davey intentionally interfered with Plaintiff Federoff's possession of the Microphone and/or IEM.

270. Defendants Cradle of Filth, Touring Entity, and/or Davey never compensated Plaintiff Federoff for depriving Plaintiff Federoff from use of the Microphone.

271. Plaintiff Federoff's IEMs were kept in the same hard case as the Microphone.

272. Plaintiff Federoff's IEMs, and the hard case containing the IEMs, were never returned to Plaintiff Federoff by the Tour Manager or any Defendants.

273. Upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey either still possess the IEMs, or have irretrievably lost the IEMS.

274. Plaintiff Federoff's IEMs were kept in the same hard case as the Microphone.

DELGADO ENTERTAINNENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

275. Plaintiff Federoff's IEMs were never returned by the tour manager or any Defendants.

276. Plaintiff Federoff is still deprived of use and possession of the Microphone and the IEMs.

277. Upon information and belief, Defendants Cradle of Filth, Touring Entity, and/or Davey either still possess the IEMs, or have irretrievably lost the IEMs.

278. Defendants Cradle of Filth, Touring Entity, and/or Davey never compensated Plaintiff Federoff for depriving Plaintiff Federoff from possession of the IEMs.

279. Plaintiff Federoff has been damaged by the loss and deprivation of the Microphone and the IEMs in the amount of the costs and lost profits.

280. As a direct and proximate result of Defendants Cradle of Filth, Touring Entity, and/or Davey intentionally interference with Plaintiff Federoff's Microphone and IEMS, Plaintiff Federoff has suffered damages including, but not limited to: (i) the fair market value and replacement cost of the Microphone and IEMs, (ii) loss of use of such equipment during professional performances, and (iii) consequential damages such as lost earnings and additional expenses incurred to replace or rent equivalent equipment.

**COUNT 5: Defamation**

**(Plaintiffs Federoff and Smerda against Defendant Davey)**

281. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

282. In the Post, Defendant Davy stated that Plaintiff Federoff and Plaintiff Smerda were engaged in "heated exchanges," including "a pattern of abusive behavior that strained the entire team."

283. In the Post, Defendant Davey directly stated and/or implied that Plaintiff Federoff consumed alcohol while pregnant, by rhetorically posing the loaded question "if [Plaintiff Federoff] was pregnant, why was she drinking at all?"

284. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant suggests, implies, and/or states that Plaintiff Federoff's drinking while pregnant was causally connected to her miscarriage.

285. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant caused significant harm to Plaintiff Federoff's reputation in the music industry, her community, and beyond.

286. Defendant Davey's statement about Plaintiff Federoff drinking while pregnant has harmed Plaintiff Federoff, including reputational harm and loss of employment opportunity.

287. In the Post, Defendant Davey stated that Plaintiff Smerda has alcoholism, referring to "Ashok's alcoholism."

288. In the same Post, Defendant Davey mischaracterized the out-of-context messages attached to the Post, stating that Plaintiff Smerda "went after the Royal family of heavy metal" by mischaracterizing statements referencing the wife of renowned, recently deceased heavy metal progenitor and co-founder of the legendary musical co John Michael "Ozzy" Osbourne, who Defendant Davey "Ozzy's wife," Sharon Osbourne.

289. Upon information and belief, the party that Plaintiff Smerda was messaging was Dez Fafara, or another representative, agent, or affiliate of Defendant Oracle.

290. Defendant Davey's mischaracterization of Plaintiff Smerda in messages about Sharon Osbourne is particularly harmful to Plaintiff Smerda's reputation in the heavy

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

metal community and the music industry generally due to the recency of the passing of Ozzy Osbourne.

291. Defendant Davey's statements in the Post were false.

292. Defendant Davey made these false statements recklessly, and/or with actual malice, knowing the statements were false or with reckless disregard for their truth or falsity.

293. Defendant Davey knew that these statements would bring Plaintiffs Federoff and Smerda into disrepute, contempt, or ridicule.

294. Defendant Davey publicly identified Plaintiffs Federoff and Smerda clearly and directly in the Post.

295. Defendant Davey published these false statements to third parties, including the general public, and such publication was not privileged.

296. Defendant Davey's statements in the Post caused reputational harm to Plaintiffs.

297. Defendant Davey's false statements in the Post have caused ongoing harm, including reputational harm and loss of employment opportunity.

298. Defendant Davey's statements in the Post caused reputational harm to Plaintiff Federoff and Plaintiff Smerda.

299. Defendant Davey's statements about Plaintiff Federoff and Plaintiff Smerda are defamatory.

300. As a direct result of Defendant Davey's statements, Plaintiff Federoff and Plaintiff Smerda have been harmed, including but not limited to reputational damages, loss of employment opportunities, and other ongoing damages.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

301. Defendant Davey is liable for the harm caused to Plaintiff Federoff and Plaintiff Smerda by the statements in the Post, including but not limited to reputational damages, loss of employment opportunities, and other ongoing damages.

302. Because Defendant Davey's conduct was willful, malicious, and undertaken with conscious disregard for Plaintiff Federoff's and Plaintiff Smerda's rights, they are entitled to punitive damages under Arizona law.

## COUNT 6: Unjust Enrichment

### (Plaintiffs Federoff, Smerda, Shaw, and Matheson against all Defendants)

303. Plaintiffs incorporate the foregoing allegations herein as if restated in full.

304. The musical performances by Plaintiffs Smerda, Shaw, and Matheson are featured prominently and integrally on the recordings of the 2017 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

305. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2017 Release.

306. Plaintiffs Smerda, Shaw, and Matheson have not been compensated for the continued exploitation of the 2017 Release featuring their musical performances.

307. Defendants have denied Plaintiffs Smerda, Shaw, and Matheson access to the accounting for the commercial exploitation of the 2017 Release.

308. Defendants' ongoing commercial exploitation of the 2017 Release, including profit obtained from the performances by Plaintiffs Smerda, Shaw, and Matheson in the 2017 Release, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Smerda and Matheson.

309. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2017 Release featuring the performances by Plaintiffs Smerda, Shaw, and Matheson, without the consent or authorization of Plaintiffs Smerda and Matheson.

310. Defendants have been unjustly enriched by the profits from the exploitation of the 2017 Release featuring the performances by Plaintiffs Smerda, Shaw, and Matheson.

311. Defendants have denied Plaintiffs Smerda, Shaw, and Matheson access to any licensing agreements for the commercial exploitation of the 2017 Release, including any agreements Defendants have entered into with record labels to distribute the 2017 Release.

312. Defendants' commercial exploitation of the 2017 Release is at the impoverishment and/or expense of Plaintiffs Smerda, Shaw, and Matheson.

313. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda, Shaw, and Matheson in the 2017 Release without compensating Plaintiffs Smerda, Shaw, and Matheson.

314. The musical performances by Plaintiffs Smerda and Shaw are featured prominently and integrally on the recordings of the 2021 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

315. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2021 Release.

316. Plaintiffs Smerda and Shaw have not been compensated for the continued exploitation of the 2021 Release featuring their musical performances.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

317. Defendants have denied Plaintiffs Smerda and Shaw access to the accounting for the commercial exploitation of the 2021 Release.

318. Defendants' ongoing commercial exploitation of the 2021 Release, including profit obtained from the performances by Plaintiffs Smerda and Shaw in the 2021 Release, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Smerda and Shaw.

319. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2021 Release featuring the performances by Plaintiffs Smerda and Shaw, without the consent or authorization of Plaintiffs Smerda and Shaw.

320. Defendants have been unjustly enriched by the profits from the exploitation of the 2021 Release featuring the performances by Plaintiffs Smerda and Shaw.

321. Defendants' commercial exploitation of the 2021 Release is at the impoverishment and/or expense of Plaintiffs Smerda and Shaw.

322. Defendants have denied Plaintiffs Smerda and Shaw access to any licensing agreements for the commercial exploitation of the 2021 Release, including any agreements Defendants have entered into with record labels to distribute the 2021 Release.

323. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda and Shaw in the 2021 Release without compensating Plaintiffs Smerda and Shaw.

324. The musical performances by Plaintiffs Smerda, Shaw, and Matheson are featured prominently and integrally on the recordings of the 2023 Release, which were

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

intended to be merged with the contributions of Defendant Davey and other individual musicians.

325. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2023 Release.

326. Plaintiffs Smerda and Matheson have not been compensated for the continued exploitation of the 2023 Release featuring their musical performances.

327. Defendants have denied Plaintiffs Smerda and Matheson access to the accounting for the commercial exploitation of the 2023 Release.

328. Plaintiffs Smerda and Matheson have not been properly or accurately credited on the 2023 Release.

329. Defendants compensated Plaintiff Shaw for his performances in the 2023 Release.

330. Defendants' payment of Plaintiff Shaw for his performances in the 2023 Release implies that Defendants believe or believed that Plaintiffs Smerda and Matheson are entitled to compensation for their performances in the 2023 Release.

331. Defendants' ongoing commercial exploitation of the 2023 Release, including profit obtained from the performances by Plaintiffs Smerda and Matheson in the 2023 Release, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Smerda and Matheson.

332. Defendants' commercial exploitation of the 2023 Release is at the impoverishment and/or expense of Plaintiffs Smerda and Matheson.

333. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

2023 Release featuring the performances by Plaintiffs Smerda and Matheson, without the consent or authorization of Plaintiffs Smerda and Matheson.

334. Defendants have been unjustly enriched by the profits from the exploitation of the 2023 Release featuring the performances by Plaintiffs Smerda and Matheson.

335. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Smerda and Matheson in the 2023 Release without compensating Plaintiffs Smerda and Matheson.

336. The musical performances by Plaintiffs Federoff and Smerda are featured prominently and integrally on the recordings of the 2025 Release, which were intended to be merged with the contributions of Defendant Davey and other individual musicians.

337. Defendants have, directly or indirectly, commercially exploited and continue to exploit the 2025 Release.

338. Plaintiffs Federoff and Smerda have not been compensated for the continued exploitation of the 2025 Release featuring their musical performances.

339. Defendants have denied Plaintiffs Federoff and Smerda access to the accounting for the commercial exploitation of the 2025 Release.

340. Defendants have denied Plaintiffs Federoff and Smerda access to any licensing agreements for the commercial exploitation of the 2025 Release, including any agreements Defendants may have entered into with record labels to distribute the 2025 Release.

341. Defendant Oracle's attempt to take a share of Plaintiff Federoff's and Plaintiff Smerda's publishing advance, without any legal basis, underscores Defendants' bad faith in Defendants' attempts to be unjustly enriched.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

342.    Defendants' ongoing commercial exploitation of the 2025 Release, including profit obtained from the performances by Plaintiffs Federoff and Smerda in the 2025 Release, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs Federoff and Smerda.

343.    Defendants' commercial exploitation of the 2025 Release is at the impoverishment and/or expense of Plaintiffs Federoff and Smerda.

344.    Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the 2025 Release featuring the performances by Plaintiffs Federoff and Smerda, without the consent or authorization of Plaintiffs Federoff and Smerda.

345.    Defendants have been unjustly enriched by the profits from the exploitation of the 2025 Release, featuring the performances by Plaintiffs Federoff and Smerda,

346.    It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of the performances by Plaintiffs Federoff and Smerda in the 2025 Release, without compensating Plaintiffs Federoff and Smerda.

347.    Plaintiffs Federoff, Smerda, Shaw, and Matheson have no alternative remedy at law for the unjust enrichment of Defendants by commercially exploiting their performances in the Recordings.

**COUNT 7: Unjust Enrichment**

**(Plaintiff Baxter against all Defendants)**

348.    Plaintiffs incorporate the foregoing allegations herein as if restated in full.

349.    Plaintiff Baxter appears, performs, and models commercially as her primary source of income.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

350. Plaintiff Baxter appeared and performed in the Music Videos for Defendants with the mutual understanding that Plaintiff Baxter would be compensated.

351. Defendants produced and distributed the Music Videos featuring Plaintiff Baxter's performances.

352. Defendants have commercially exploited and continue to exploit Music Videos featuring Plaintiff Baxter's likenesses and images, a benefit derived directly from Plaintiff Baxter's identities and reputations.

353. Defendants never compensated Plaintiff Baxter for performances during the production of the Music Videos.

354. Plaintiff Baxter's performances are featured prominently and integrally in the Music Videos.

355. Defendants have, directly or indirectly, commercially exploited and continue to exploit the Music Videos.

356. Plaintiff Baxter has not been compensated for the continued exploitation of the Music Videos.

357. Defendants have refused to compensate Plaintiff Baxter for performances in the Music Videos.

358. Defendants' refusal to compensate Plaintiff Baxter for performances in the Music Videos unjustly enriches Defendants to the detriment of Plaintiff Baxter.

359. Defendants' commercial exploitation of the Music Video is at the impoverishment and/or expense of Plaintiff Baxter.

360. Defendants have been unjustly enriched by the profits from the exploitation of Plaintiff Baxter's performances in the Music Videos.

361.    It would be inequitable and unjust for Defendants to retain the profits derived from Plaintiff Baxter's performances in the Music Videos without compensating Plaintiff Baxter.

362.    Plaintiff Baxter has no alternative remedy at law for the unjust enrichment of Defendants by commercially exploiting her performances in the Music Videos.

## COUNT 8: Unjust Enrichment

## (all Defendants – in the alternative)

363.    Plaintiffs incorporate the foregoing allegations herein as if restated in full.

364.    Defendants have sold and continue to sell Merchandise featuring the Plaintiffs' likenesses and images, receiving a benefit derived directly from Plaintiffs' identities and reputations.

365.    Defendants have sold and continue to sell Merchandise featuring the Plaintiff Matheson's Sigils, receiving a benefit derived directly from the commercial value of Plaintiff Matheson's copyrighted works.

366.    Plaintiffs did not authorize Defendants' sale and commercial exploitation of Merchandise.

367.    Plaintiff Matheson did not authorize Defendants to use the Sigils.

368.    Plaintiff Matheson did not authorize Defendants to create, manufacture, or produce Sigil Merchandise containing the Sigils.

369.    Plaintiff Matheson did not authorize Defendants to license use of the Sigils in the Sigil Merchandise to third parties.

370.    Plaintiff Baxter did not authorize Defendants to use Plaintiff Baxter's performance in the Music Videos without compensation.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

371. Defendants benefited by profiting from the Merchandise featuring Plaintiffs' likenesses and images.

372. Plaintiffs have not been compensated for the continued use of their likenesses and images in Merchandise.

373. Plaintiff Matheson has not been compensated for Defendants' continued use of the copyrighted Sigils.

374. Plaintiff Matheson has not been compensated for the continued commercial exploitation of the Sigils.

375. Defendants' continued commercial exploitation of the Sigils is to Plaintiff Matheson's detriment.

376. Defendants have been unjustly enriched by the exploitation of Plaintiffs' likenesses and images.

377. Defendants' ongoing commercial exploitation of the Merchandise, including profit obtained from the Merchandise containing Plaintiffs' likeness and images, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiffs.

378. Defendants' ongoing commercial exploitation of the Sigil Merchandise, including profit obtained from the Sigil Merchandise without authorization, unduly benefits Defendants and causes ongoing financial harm, reputational harm, and lost profits to Plaintiff Matheson.

379. Defendants have not compensated Plaintiffs Federoff and Smerda for their Live Performances prior to their disassociation.

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

- 64 -

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

380. Upon information and belief, Defendants profited from the Live Performances, including without limitation from ticket sales.

381. Defendants' refusal to compensate Plaintiffs Federoff and Smerda for the Live Performances unjustly enriches Defendants to the detriment of Plaintiffs Federoff and Smerda.

382. Defendants' refusal to provide access to any accounting statements, sales records, and any licensing agreements allows Defendants to continue to profit from the Merchandise featuring Plaintiffs' likenesses and images.

383. Defendants have been unjustly enriched by the profits from the exploitation of Plaintiffs' likenesses and images in Merchandise.

384. It would be inequitable and unjust for Defendants to retain the profits derived from the unauthorized exploitation of Plaintiffs' likenesses without compensating Plaintiffs.

385. In the alternative to Counts 1 through 7 herein, Plaintiffs have no alternative remedy at law for the unjust enrichment of Defendants.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment against the Defendants as follows:

   A. An Order finding Defendants liable for false designation of origin under 15 U.S. Code § 1125.

   B. An Order finding Defendants liable for the misappropriation of Plaintiffs' likenesses and images;

   C. An order finding Defendants Cradle of Filth, Touring Entity, and Davey liable for copyright infringement of Plaintiff Matheson's Sigils;

D. An Order issuing injunctive relief requiring Defendants to destroy and cease selling any Sigil Merchandise;

E. An Order issuing injunctive relief requiring Defendants to destroy and cease selling any Merchandise featuring Plaintiffs' likenesses and images;

F. An order finding Defendants Cradle of Filth, Touring Entity, and Davey liable for conversion of the Audio Equipment;

G. An Order finding Defendant Davey liable for defamation;

H. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of Plaintiff Baxter's performances in Music Videos;

I. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2017 Release by Plaintiffs Smerda, Shaw and Matheson;

J. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2021 Release by Plaintiffs Smerda and Shaw;

K. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2023 Release by Plaintiffs Smerda and Matheson;

L. An Order finding Defendants liable for unjust enrichment from the commercial exploitation of performances in the 2025 Release by Plaintiffs Federoff and Smerda;

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657

M. An Order (in the alternative) finding Defendants liable for unjust enrichment from the commercial exploitation of Plaintiffs' likenesses and images in Merchandise and the Live Performances;

N. An Order issuing injunctive relief requiring the Defendants to retract, remove, and correct all defamatory references to the Plaintiffs;

O. An award for compensatory damages in excess of the minimum jurisdictional limits of this Court and according to proof, including damages for reputational harm, emotional distress, loss of income, business opportunities, and any other consequential damages;

P. An award for punitive damages in an amount sufficient to deter Defendants from engaging in similar conduct in the future;

Q. An award of attorney's fees and costs as permitted by law, including under 15 U.S.C. § 1117(a);

R. An award for prejudgment interest on any amounts owed; and

S. For all such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 9th day of December 2025.

By: *s/Krystle Delgado*
Krystle Delgado, Esq.
AZ Bar No.: 031219
**Delgado Entertainment Law, PLLC**
6803 E Main Street, Suite 1116
Scottsdale, Arizona 85251
Telephone: (480) 248-0657
Facsimile: (480) 718-8759
krystle@delgadoentertainmentlaw.com
*Attorney for Plaintiffs*

DELGADO ENTERTAINMENT LAW, PLLC
6803 E Main Street, Suite 1116
Scottsdale AZ 85251
(480) 248-0657