**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zoe Federoff Smerda, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Oracle Management Incorporated, et al.,<br><br>Defendants. | No. CV-25-00542-TUC-RM<br><br>**ORDER** |

Plaintiffs Zoe Federoff Smerda ("Federoff"), Marek Smerda ("Smerda"), Richard Shaw ("Shaw"), Paul Allender ("Allender"), Sasha Baxter ("Baxter"), and Lindsay Matheson ("Matheson") filed the operative Second Amended Complaint ("SAC") in this action on December 9, 2025. (Doc. 11.) Defendant The Oracle Management, Inc. ("Oracle") moves to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) or, alternatively, to transfer venue to the United States District Court for the Central District of California. (Doc. 13.) Defendants Daniel Lloyd Davey ("Davey"), Cradle of Filth Touring, Limited ("Touring Entity"), and Cradle of Filth LLP (collectively, "UK Defendants") move to dismiss under Rule 12(b)(2) and 12(b)(6) or, in the alternative, to dismiss on grounds of forum non conveniens. (Doc. 17.) Also pending before the Court is the UK Defendants' Motion for Leave to File Reply in Support of Motion to Dismiss. (Doc. 19.)[1]

For the following reasons, the Court will grant the UK Defendants' Motion for

---

[1] The Court finds all pending Motions suitable for resolution without oral argument.

Leave to File Reply, grant the Motions to Dismiss for lack of personal jurisdiction under Rule 12(b)(2), and deny as moot the remaining portions of the Motions to Dismiss.

**I.      Background**

Plaintiffs are individuals residing in Arizona, California, Canada, and the United Kingdom, who were previously affiliated with the heavy metal band Cradle of Filth.  (Doc. 11 at 2, 6 ¶¶ 2-3, 32-35.)[2]  Plaintiffs allege that Defendants failed to pay them royalties owed for live and recorded performances; exploited their names, likenesses, and copyrighted artwork without authorization or compensation; defamed them; and took audio equipment from them.  (*See generally* Doc. 11.)  Plaintiffs sue all Defendants for false designation of origin (Count 1), misappropriation of likeness (Count 3), and unjust enrichment (Counts 6, 7, and 8); Matheson sues Cradle of Filth LLP, Touring Entity, and Davey for copyright infringement (Count 2); Federoff sues Cradle of Filth LLP, Touring Entity, and Davey for conversion (Count 4); and Federoff and Smerda sue Davey for defamation (Count 5).  (*Id.* at 43-65 ¶¶ 202-385.)

Plaintiffs allege that Davey is an individual who resides in the United Kingdom; that Touring Entity and Cradle of Filth LLP are companies incorporated in the United Kingdom with their principal places of business in London; and that Oracle is a company incorporated in California with its principal place of business in Los Angeles.  (*Id.* at 7 ¶¶ 36-39.)  Plaintiffs allege that this Court has personal jurisdiction over Defendants because Cradle of Filth and Davey performed at music venues in Arizona on five occasions between the years 2021 and 2025; Oracle helped facilitate the Arizona performances and was present at two of them; and Defendants sold merchandise bearing Plaintiffs' likenesses at one or more of the Arizona performances.  (*Id.* at 8-14 ¶ 44-47.)

In support of their Rule 12(b)(2) Motion to Dismiss, the UK Defendants submit a declaration by Davey, who is a founding member of the band Cradle of Filth.  (Doc. 17-1.) Davey avers that "Cradle of Filth performs globally, with extensive tours spanning North America, Europe, South America[], Asia, and Australia," and only a few tour stops in

---

[2] All record citations refer to the page numbers generated by the Court's electronic filing system.

Arizona over the last five years. (*Id.* at 2-3 ¶¶ 2, 7.) Touring Entity and Cradle of Filth LLP handle "touring logistics, brand development, licensing and merchandising" for the band. (*Id.* at 2 ¶ 3.) The entities do not conduct regular business operations in Arizona, do not pay Arizona business taxes, and do not maintain any Arizona business facilities or inventory. (*Id.* at 2 ¶ 4.) Davey, Touring Entity, and Cradle of Filth LLP have never "specifically targeted Arizona for merchandising sales, advertising, or marketing," and any merchandise sold during the band's U.S. tours was "incidental to live performances" at "isolated tour stops." (*Id.* at 3 ¶¶ 6, 8.)

In support of its Rule 12(b)(2) Motion to Dismiss, Oracle submits a declaration by its principal, Dez Fafara. (Doc. 14.) Fafara avers that Oracle "provides management and consulting services to musical artists and entertainers," including Cradle of Filth, but "does not operate as a concert promoter, booking agency, merchandise company, or record label." (*Id.* at 2 ¶ 3.) Oracle does not have any offices, mailing addresses, telephone listings, bank accounts, property, or employees in Arizona; is not registered to do business in Arizona; does not pay Arizona taxes; does not maintain any physical presence in Arizona; "does not advertise, solicit clients, or direct marketing toward" Arizona residents; and "has never entered into any contract or agreement" in Arizona. (*Id.* at 2-3 ¶ 4, 6-7.) Oracle is not a party to its clients' merchandise and touring agreements. (*Id.* at 2-3 ¶ 7.) "Oracle has never authorized, directed, or participated in the sale or distribution of any merchandise in Arizona bearing" Plaintiffs' "names, likenesses, or performances." (*Id.* at 3 ¶ 9.) Oracle receives management commissions derived from Cradle of Filth's international earnings, "a de minimis portion of which may have been derived from the band's merchandise sales in Arizona." (*Id.*) Fafara was present at the Arizona performances referenced in the SAC solely in connection with musical performances by a band named Devildriver, rather than as a representative of Oracle. (*Id.* at 3-4 ¶¶ 10-11.)

Plaintiffs submit with their Response to Oracle's Motion to Dismiss a declaration by Federoff stating that Oracle and its representatives managed, coordinated, and/or communicated information about tour dates, ticket sales, and payment for performances,

essentially serving as a liaison between Plaintiffs and booking agents. (Doc. 15-1.) Plaintiffs did not submit any declarations in response to the UK Defendants' Motion to Dismiss.

## II.    Motion for Leave to File Reply

In their Motion for Leave to File Reply, the UK Defendants seek permission to file a reply after expiration of the deadline for doing so, averring that their failure to file the reply by the deadline resulted from a calendaring error by counsel. (Doc. 19.) Plaintiffs oppose the Motion. (Doc. 21.)

The Court may extend a deadline after its expiration "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In determining whether neglect is excusable, the Court considers "all relevant circumstances," including the danger of prejudice to the opposing party, the length of the delay, the potential impact of the delay on the proceedings, the reason for the delay, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

As an initial matter, both Plaintiffs and the UK Defendants incorrectly assert that the due date for the Reply was February 24, 2026. (*See* Doc. 19 at 2; Doc. 21 at 2.) The Local Rules of Civil Procedure ("LRCiv") provide that a reply memorandum is typically due seven days after service of a responsive memorandum. LRCiv 7.2(d). However, if one or more of the grounds asserted in a motion to dismiss is lack of personal jurisdiction, then the reply memorandum is due fifteen days after service of the responsive memorandum. *See* LRCiv 12.1(b); LRCiv 56.1(d). Accordingly, the UK Defendants' Reply was due on March 4, 2026, and the UK Defendants are seeking a 13-day extension of the deadline.

Calendaring errors are not strong reasons for delay, as they are within the movant's control. *See Miley v. Hard Rock Hotel & Casino Punta Cana*, 537 F. Supp. 3d 1, 5 (D.D.C. 2021) (finding calendaring error did not constitute excusable neglect); *Est. of Taschek v. Fid. Life Ass'n*, 740 F. Supp. 3d 1072, 1079 (D. Nev. 2024) (excusing a short delay resulting from a calendaring error but noting the weakness of the reason for the delay).

However, there is no evidence of bad faith and no indication that the short filing delay resulted in prejudice to Plaintiffs or any significant delay in these proceedings. Accordingly, although the Court does not condone defense counsel's failure to carefully review the Local Rules of Civil Procedure, the Court will grant the Motion for Leave to File Reply.

### III.    Personal Jurisdiction

Oracle argues that this Court lacks personal jurisdiction over it because it is a California corporation with its principal place of business in California; it does not have any continuous and systematic contacts with Arizona; and it did not purposefully direct any conduct toward Arizona or purposefully avail itself of the benefits of doing business in this forum. (Doc. 13.)  The UK Defendants argue that this Court lacks jurisdiction over them because they are not domiciled here, their isolated tour-related contacts are insufficient to establish purposeful direction or purposeful availment, and Plaintiffs' claims do not arise out of the forum contacts.  (Doc. 17.)  Plaintiffs contend that personal jurisdiction over Defendants exists due to their involvement in performances in Arizona and their involvement in the sale of merchandise bearing Plaintiffs' likenesses at those performances. (Docs. 15, 18.)

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a complaint for lack of personal jurisdiction.  When a defendant moves to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 50 (N.D. Cal. Mar. 27, 2020).  If a Rule 12(b)(2) "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks omitted).  A plaintiff cannot "simply rest on the bare allegations of its complaint," *id.*, and the Court may not

assume the truth of any allegations in the complaint that are contradicted by affidavit, *Apple Inc.*, 445 F. Supp. 3d at 50.  However, uncontroverted allegations in the complaint are taken as true, and conflicts between the parties "over statements contained in affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger*, 374 F.3d at 800.

**B. Discussion**

Service of process or waiver of service "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"  Fed. R. Civ. P. 4(k)(1)(A).  In addition, with respect to claims arising under federal law, service or waiver of service "establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).

Courts in Arizona may exercise personal jurisdiction to the full extent permissible under the United States Constitution, and therefore the jurisdictional analysis under state law is coextensive with that under federal due process.  *See* Ariz. R. Civ. P. 4.2(a); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Federal due process requires that a defendant be subjected to personal jurisdiction only if the defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction may be either general or specific.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  General jurisdiction allows "a court to hear any and all claims against a defendant, whether or not the conduct at issue has any connection to the forum."  *Id.* (internal quotation marks omitted).  "Specific jurisdiction exists when a case arises out of or relates to the defendant's contacts with the forum."  *Id.* (internal quotation and alteration marks omitted).

. . . .

### 1. General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137. For a corporation, the paradigm forums for the exercise of general jurisdiction are "the place of incorporation and principal place of business." *Id.* General jurisdiction over a corporation may exist elsewhere only in an "exceptional case," *Ranza*, 793 F.3d at 1069, where the corporation's affiliations with the forum state "are so 'continuous and systematic' as to render [the corporation] essentially at home" there, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317).

Plaintiff has not established that this Court has general jurisdiction over any of the Defendants. None of the Defendants are residents of Arizona; Davey is an individual residing in the United Kingdom; Cradle of Filth and Touring Entity are incorporated in the United Kingdom and headquartered in London; and Oracle is incorporated in California and headquartered in Los Angeles. (Doc. 11 at 7 ¶¶ 36-39.) Plaintiffs have not shown that any of the Defendants' contacts with Arizona are so "continuous and systematic" that the Defendant can be considered "essentially at home" here. *Goodyear Dunlop Tires Operations*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317).

### 2. Specific Personal Jurisdiction

The existence of specific personal jurisdiction is evaluated under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of the test; if the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The first prong of the specific jurisdiction test may be satisfied by purposeful availment, purposeful direction, or some combination of the two. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). A purposeful availment analysis is typically used in suits sounding in contract, while a purposeful direction analysis is typically used in suits sounding in tort. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). A defendant purposefully avails itself "of the privilege of doing business in a forum state" by taking "actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. A defendant purposefully directs activities toward the forum by (1) committing an intentional act; (2) expressly aimed at the forum; (3) which causes harm that "the defendant knows is likely to be suffered in the forum[.]" *Id.* at 803 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). If a plaintiff shows that the "defendant purposefully established minimum contacts with the forum," the Court evaluates the reasonableness of exercising jurisdiction by considering the defendant's contacts "in light of other factors," such as "the burden on the defendant" of litigating in the forum, the forum's "interest in adjudicating the dispute," and the "plaintiff's interest in obtaining convenient and effective relief[.]" *Burger King Corp.*, 471 U.S. at 476–77 (internal quotation marks omitted).

### a. Pendent Jurisdiction

Specific personal jurisdiction is analyzed on a claim-by-claim basis; each claim asserted against a nonresident defendant must have "a connection to the defendant's forum contacts." *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 686 (9th Cir. 2025); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant."). However, [i]f personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Plaintiffs' jurisdictional allegations and arguments relate solely to Cradle of Filth's

Arizona performances and Defendants' alleged sale of merchandise bearing Plaintiffs' likenesses at those Arizona performances. (*See* Doc. 11 at 8-14 ¶¶ 44-47; Doc. 15; Doc. 18.) Counts 1, 3, and a portion of Count 8 relate to that conduct. (*See* Doc. 11 at 43-46, 48-51, 63-65 ¶¶ 202-221, 242-262, 363-385.) The other counts of the SAC do not arise from a common nucleus of operative facts, and Plaintiffs do not allege in the SAC any facts establishing a connection between Arizona and any of the other counts.

In Count 2, Matheson alleges that Cradle of Filth, Touring Entity, and Davey used Matheson's artwork in merchandise and marketing materials, in violation of exclusive Canadian copyrights. (*Id.* at 46-48 ¶¶ 222-241.) Plaintiffs do not allege that the merchandise bearing Matheson's artwork is the same as the merchandise bearing Plaintiffs' likenesses, nor do Plaintiffs allege that Defendants sold merchandise bearing Matheson's artwork in Arizona. Because there is no indication that Count 2 arises from the same merchandise sales at issue in the claims for which Plaintiffs have alleged facts relevant to specific jurisdiction, and because Plaintiffs do not allege any facts connecting the conduct at issue in Count 2 to Arizona, neither specific jurisdiction nor pendent jurisdiction exists over Count 2.[3]

In Count 4, Federoff alleges that Cradle of Filth, Touring Entity, and Davey took and failed to return a microphone and in-ear monitors that belonged to him. (*Id.* at 51-53 ¶¶ 263-280.) Plaintiffs do not specify where this alleged conversion occurred, and there is no indication in the record that it occurred in Arizona. The facts underlying Count 4 are entirely distinct from those underlying the claims for which Plaintiffs have alleged a connection to Arizona.

In Count 5, Federoff and Smerda allege that Davey defamed them in a social media post. (*Id.* at 53-56 ¶¶ 281-302.) The SAC does not allege any connection between the social media post and Arizona. Davey avers in his uncontroverted declaration that the social media post was made outside Arizona and to a global audience. (Doc. 17-1 at 3 ¶

---

[3] Furthermore, for the reasons discussed in Section III(B)(2)(b), *infra*, even if the Court were to assume that merchandise bearing Matheson's artwork was sold at Cradle of Filth performances in Arizona, Plaintiffs still have failed to establish specific jurisdiction with respect to this claim.

10.) Because the conduct underlying Count 5 bears no connection to Arizona and does not arise from a common nucleus of operative facts as the claims for which Plaintiffs have alleged an Arizona connection, no specific or pendent jurisdiction exists over Count 5.

In Count 6, Federoff, Smerda, Shaw, and Matheson allege that Defendants failed to compensate them for recorded performances released in 2017, 2021, 2023, and 2025. (Doc. 11 at 56-61 ¶¶ 303-347.)  In Count 7, Baxter alleges that Defendants failed to compensate her for her performance in music videos. (*Id.* at 61-63 ¶¶ 348-362.)  Plaintiffs do not allege that the performances at issue in Counts 6 or 7 occurred in Arizona or that there is otherwise any connection between these claims and Arizona.  Furthermore, these claims do not arise from a common nucleus of operative facts as the claims for which Plaintiffs have alleged a connection to Arizona.

In conclusion, even assuming the Court has specific jurisdiction over Counts 1, 3, and a portion of Count 8 based on Defendants' involvement in Arizona performances and merchandise sales, the Court lacks specific or pendent personal jurisdiction with respect to Counts 2, 4, 5, 6, 7, and the remaining portion of Count 8.

### b. Arizona Performances and Merchandise Sales

Counts 1, 3, and a portion of Count 8 allege that Defendants sold merchandise bearing Plaintiffs' likenesses and failed to compensate Plaintiffs for live performances. (*See* Doc. 11 at 43-46, 48-51, 63-65 ¶¶ 202-221, 242-262, 363-385.)  There is no dispute that the conduct underlying these claims is global in scope.  The uncontroverted averments of Davey's declaration establish that Cradle of Filth performs internationally, with extensive tours spanning North America, Europe, South America, Asia, and Australia, and with only a few, episodic tour stops in Arizona over the last five years. (Doc. 17-1 at 2-3 ¶¶ 2, 7.)  Plaintiffs' SAC alleges that five performances occurred in Arizona between the years 2021 and 2025, and that Defendants sold merchandise bearing Plaintiffs' likenesses at one or more of those Arizona performances. (Doc. 11 at 8-14 ¶¶ 44-47.)

In assessing specific jurisdiction, the Court must analyze "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

- 10 -

The defendant's relationship with the forum "must arise out of contacts" that the defendant itself creates, as opposed to contacts created by the plaintiffs or third parties. *Id.* Furthermore, the defendant's contacts must be with the forum itself, rather than "with persons who reside there." *Id.* at 285. For the exercise of specific jurisdiction to comport with the limits of due process, the connection between the forum and "the defendant's suit-related conduct" must be "substantial." *Id.* at 284. A defendant cannot "be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]" *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted).

If Plaintiffs were suing Defendants only for failing to compensate Plaintiffs for Arizona performances and for merchandise sales occurring only in Arizona, the jurisdictional analysis would be very different. But Plaintiffs' claims are not nearly so limited. Instead, Plaintiffs seek damages arising from international tours and global merchandise sales occurring over a span of years. When a claim seeks to recover damages suffered in multiple forums, the defendant's contacts with the forum must be judged in light of the multi-forum nature of the claim. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). Here, Defendants' contacts with Arizona "must be such that it is 'fair' to compel" them to defend a lawsuit seeking damages related to global merchandise sales and international performances, "even though only a small portion" of the sales and performances occurred in Arizona. *Id.*

Here, even assuming that the UK Defendants were directly involved in failing to compensate Plaintiffs for Arizona performances and for selling merchandise bearing Plaintiffs' likenesses in Arizona, the Court cannot conclude that Plaintiffs' claims arise out of the UK Defendants' forum-related activities, because the percentage of the relevant performances and merchandise sales which occurred in Arizona is so small as to "be characterized as random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774. Under Plaintiff's theory of personal jurisdiction, any forum in the world in which Cradle of Filth has performed during international tours over a span of years would have personal jurisdiction to adjudicate claims against Defendants that are global in scope. Such an

expansive view of personal jurisdiction does not comport with the limits of due process. Given the global nature of Plaintiffs' claims, and the isolated, sporadic nature of the Arizona performances identified in the SAC, the Court cannot conclude that the UK Defendants' suit-related conduct creates a connection with Arizona sufficient for the exercise of specific personal jurisdiction.

Oracle's contacts with Arizona are even more attenuated. Plaintiffs failed to controvert Fafara's averment that he was present at the two Arizona performances referenced in the SAC not as a representative of Oracle but, instead, to perform with the band Devildriver. (*See* Doc. 14 at 3-4 ¶ 10-11.) Furthermore, Federoff's declaration does not establish that Oracle directly sold any merchandise in Arizona or was directly involved in booking any Arizona performances. Federoff's declaration establishes only that Oracle acted as a liaison, communicating information about Arizona performances to Plaintiffs. (*See* Doc. 15-1.) Oracle received revenue from Arizona ticket and merchandise sales only indirectly in the form of a de minimis amount of a commission derived from a percentage of Cradle of Filth's international earnings. (Doc. 14 at 3 ¶ 9.) Plaintiffs have failed to show that Oracle committed any intentional torts while physically present in Arizona, that Oracle expressly aimed its conduct toward Arizona with knowledge that harm was likely to be suffered in Arizona, or that the claims in this action arise out of Oracle's Arizona-related activities.

Furthermore, even if Plaintiffs had met their burden of establishing the first two prongs of the test for specific jurisdiction, the exercise of specific jurisdiction over Defendants would not be reasonable. Defendants have no presence in Arizona and will incur substantial burdens and costs in being forced to defend this action here. Nearly all documentary and testimonial evidence in this matter is located outside of Arizona and outside this Court's subpoena power. Plaintiff's interest in obtaining convenient and effective relief does not support the exercise of specific personal jurisdiction, because only three of the six Plaintiffs are located in Arizona, and even if the Court exercised jurisdiction over the claims for which Plaintiffs have alleged any Arizona connection, the Court would

lack pendent jurisdiction over the remaining claims for the reasons discussed in Section III(B)(2)(a), *supra*. Finally, Arizona has little interest in adjudicating a dispute involving the international conduct of out-of-state defendants.

### c.  Rule 4(k)(2)

Plaintiffs allege that this Court has personal jurisdiction over the UK Defendants under Federal Rule of Civil Procedure 4(k)(2) because Counts 1 and 2 arise under federal law, Defendants do not contend they are subject to jurisdiction in any state's courts of general jurisdiction, and Defendants have regularly toured throughout the United States over many years.  (Doc. 18 at 6-7.)

As discussed above, the Court has personal jurisdiction over a defendant with respect to a claim arising under federal law if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis," except that the Court considers "contacts with the nation as a whole" rather than contacts with the forum state.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

Here, two of Plaintiffs' claims arise under federal law, and there is no indication that the UK Defendants are subject to jurisdiction in any state's courts of general jurisdiction.  However, Plaintiffs have failed to plead facts or present evidence showing that exercising jurisdiction under Rule 4(k)(2) would be consistent with due process.  The SAC alleges specific facts only with respect to isolated performances in Arizona (Doc. 11 at 8-11 ¶ 44), which the Court has already found insufficient to establish minimum contacts.  The SAC does not allege facts concerning performances or conduct elsewhere in the United States, and there is therefore no basis on which the Court could find sufficient minimum contacts with the United States for purposes of Rule 4(k)(2).

### 3.  Evidentiary Hearing

In response to Oracle's Motion to Dismiss, Plaintiffs ask the Court to set an

evidentiary hearing to resolve factual disputes relevant to Oracle's Motion to Dismiss or, alternatively, to postpone ruling until trial. (Doc. 15 at 12.) The Court finds that an evidentiary hearing is not necessary, because there are no relevant factual disputes; as discussed above, Federoff's declaration does not controvert the averments in Fafara's declaration.

### 4. Leave to Amend

Plaintiffs have already amended their operative complaint twice, including once after being notified by Defendants of issues concerning personal jurisdiction. (*See* Doc. 13 at 7; Doc. 17 at 5.) In their Responses to Defendants' Motions to Dismiss, Plaintiffs do not request leave to further amend. (*See* Docs. 15, 18.) Given Plaintiffs' failure to cure jurisdictional deficiencies despite multiple prior amendments, and given Plaintiffs' failure to request leave to further amend, the Court will dismiss the SAC without leave to amend.

### 5. Conclusion

For the reasons discussed herein, the Court will grant Defendants' Motions to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Because the Court is granting Defendants' Motions under Rule 12(b)(2), the Court declines to consider Defendants' alternative arguments regarding venue, forum non conveniens, and dismissal for failure to state a claim under Rule 12(b)(6).

**IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 13, 17) are **granted** to the extent they request dismissal under Federal Rule of Civil Procedure 12(b)(2), and otherwise denied as moot. Plaintiffs' Second Amended Complaint (Doc. 11) is **dismissed** for lack of personal jurisdiction, without prejudice to refiling in an appropriate court.

**IT IS FURTHER ORDERED** that the UK Defendants' Motion for Leave to File Reply (Doc. 19) is **granted**. The Clerk of Court is directed to file the UK Defendants' Reply in support of Motion to Dismiss (lodged at Doc. 20).

. . . .

. . . .

. . . .

- 14 -

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

Dated this 24th day of April, 2026.

_____
Honorable Rosemary Márquez
United States District Judge